**June MEYER, Selma Pundyk, Agnes Healy and Dorothy Dubose, individually and on behalf of all other persons similarly situated, Plaintiffs,**

**and**

**United States Equal Employment Opportunity Commission, Plaintiff-Intervenor,**

**v.**

**MACMILLAN PUBLISHING CO., INC., A Corporation, Defendant.**

**No. 78 Civ. 2133 (MEL).**

United States District Court,
S. D. New York.

April 21, 1982.

Douglas D. Scherer, Samuel Stein, New York City, for plaintiffs.

Melina M. Sweet, Macmillan Publishing Co., Inc., New York City, for defendant; Epstein, Becker, Borsody & Green, P. C., New York City, of counsel.

LASKER, District Judge.

In this four year old action alleging that Macmillan Publishing Co., Inc. discriminat-

---

ed against plaintiffs on the basis of sex, defendant is now making its third motion to dismiss the complaint. Macmillan's first motion, made in 1978, asked summary judgment against the Macmillan Women's Group, on the grounds that the Group never filed a charge with the EEOC. The second motion, filed in 1981, was based on contentions of res judicata. In addition, Macmillan has moved four times in connection with discovery matters.

The instant motion, which was raised in Macmillan's *reply* memorandum to plaintiffs' motion for class certification,[1] argues that the Court lacks subject matter jurisdiction over the action on the grounds that plaintiffs failed to comply with the requirements of Title VII's section 706(c), 47 U.S.C. 2000e–5(c). Section 706(c) requires a civil rights complainant to file a complaint with an appropriate state agency, if such an agency exists in his or her state, prior to filing an action under Title VII. Macmillan contends that plaintiffs failed to comply with 706(c) because they refused to identify themselves in their complaint, choosing instead to have their attorney file the complaint "on behalf of" plaintiffs. The New York State Division of Human Rights dismissed the complaint because state law does not permit "on behalf of" complaints such as plaintiffs sought to file. (Decision of New York State Division of Human Rights, December 31, 1974, attached as Exhibit E to Plaintiffs' Supplemental Memorandum.) The Division determined that plaintiffs' attorney's concern that "her clients may be retaliated against if their names are revealed [was] not sufficient reason" to allow the "on behalf of" form of complaint. (*Id.* at 2)

The initial question is whether Macmillan, having waited nearly four years to raise this objection has waived it, or whether, as Macmillan contends, the requirements

of 706(c) are jurisdictional and therefore not subject to waiver. Although prior decisions in this district have suggested that section 706(c) is jurisdictional, *see, e.g. Albano v. General Adjustment Bureau, Inc.,* 478 F.Supp. 1209 (S.D.N.Y.1979), *aff'd mem.* 622 F.2d 572 (2d Cir. 1980), the Supreme Court's recent opinion in *Zipes v. Trans World Airlines,* — U.S. —, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), casts those determinations in serious doubt. However, in view of the conclusion, *infra,* that plaintiffs have met the requirements of section 706(c), it is unnecessary to consider the impact on section 706(c) of the *Zipes* decision, which held that the statutory time limit for filing charges under Title VII is not jurisdiction.[2]

The question whether plaintiffs state complaint complied with section 706(c) is controlled by *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). In *Oscar Mayer,* the Supreme Court concluded that a plaintiff in an Age Discrimination in Employment Act case had complied with that statute's requirement of filing with the state agency although he filed his complaint with the state after the running of the state's statute of limitations.

Macmillan attempts to distinguish *Oscar Mayer* by arguing: .(1) the Age Discrimination statute differs from Title VII;[3] and (2) that a state statute of limitations differs from a requirement that plaintiffs disclose their identities. The argument is without merit.

First, the Supreme Court stated several times in *Oscar Mayer* that the state deferral requirement of the Age Discrimination Act, § 14(b), is to be interpreted consistently with the "almost *in haec verba*" language of section 706(c). 441 U.S. at 756, 99 S.Ct. at 2071. Thus, the Court noted the "clear

---

1. The Court was agreeable to considering a motion made in this manner only because the grounds asserted were alleged to be jurisdictional.

2. Although it is unnecessary to decide the question, it appears that the Court's broad language in *Zipes,* see especially ——, 102 S.Ct. at 1134,

supports strongly the argument that a similar result would be reached with respect to section 706(c).

3. Macmillan contends that Title VII differs from the ADEA in that Title VII requires more in the way of exhaustion of administrative remedies than does the ADEA.

and convincing evidence that Congress intended § 14(b) to have the *same meaning* as § 706(c)." 441 U.S. at 758, 99 S.Ct. at 2072 (emphasis added).

Second, the Court's reasons for allowing the claims in *Oscar Mayer*, despite the running of the state's statute of limitations, are equally applicable here:

> "Section 14(b) does not stipulate an exhaustion requirement. The section is intended only to give state agencies a limited opportunity to settle the grievances of ADEA claimants in a voluntary and localized manner ... Individuals should not be penalized if States decline, *for whatever reason*, to take advantage of these opportunities. *Congress did not intend to foreclose federal relief simply because state relief was also foreclosed.*"

441 U.S. at 761, 99 S.Ct. at 2074 (emphasis added). Macmillan attempts to distinguish *Oscar Mayer* on the grounds that the state requirement there dealt only with a statute of limitations, whereas here the statutory requirement relates to identification of the plaintiffs, an issue which the defendant contends to be fundamental. This ignores the Supreme Court's discussion of the legislative history of section 706(c), which states that Congress intended to "avoid[ ] burdensome case-by-case inquiry into the reasonableness of various state procedural requirements." *Id.* at 763, 99 S.Ct. at 2075.

Furthermore, it is difficult to conceive of any prejudice to Macmillan caused by the state's refusal to consider plaintiffs' complaint. As has been fully detailed in response to Macmillan's last motion for summary judgment, the state made extensive efforts to resolve this matter in response to a complaint filed by the New York Attorney General.[4]

 Finally, Macmillan's reliance on Judge Goettel's opinion in *Albano, supra,* is misplaced. In *Albano,* the state agency invited the plaintiff to pursue her claim with them. Apparently on advice of counsel, she refused. Judge Goettel concluded that her refusal to cooperate with the state agency deprived the agency of a bona fide opportunity to settle the grievance. In the instant case, by contrast, plaintiffs did attempt to pursue their state remedies, and, in fact, the record demonstrates plaintiffs' spirited cooperation with a state investigation conducted pursuant to the Attorney General's complaint. While New York is free to place whatever requirements it sees fit on the filing of complaints before its agencies, it may not, by doing so, foreclose a plaintiff from pursuing her claim under federal law. That much is settled by *Oscar Mayer.*

Accordingly, defendant's motion to dismiss is denied.[5]

It is so ordered.

---

**4.** In fact, it is somewhat unseemly for Macmillan to complain of plaintiffs' "short-circuiting" of the state procedures, after having vehemently argued, in its last motion, the injustice of being forced to submit to both federal *and state* proceedings with respect to the same alleged civil rights violations.

**5.** In view of the multiplicity of defendant's motions to dismiss, and the age of the case, no further motions to dismiss shall be filed without prior consultation with the Court.