Veronice A. HOLT

v.

The CONTINENTAL GROUP, INC., et al.

Civ. No. B-82-119(EBB).

United States District Court, D. Connecticut.

May 15, 1985.

---

Veronice A. Holt, pro se.

Deborah Green, Staff Atty., Com'n on Human Rights and Opportunities, Hartford, Conn., for defendant.

## RULING ON STATE DEFENDANTS' MOTION TO DISMISS

ELLEN B. BURNS, District Judge.

### I. *Background*

Plaintiff initially filed this action against her former employer, The Continental Group, Inc. ("Continental"), seeking reinstatement to her former position as a securities lawyer. Plaintiff had been employed by Continental since October, 1976, holding several positions within the corporation and its subsidiaries. Plaintiff came to believe that the compensation structure used by Continental discriminated against women and minorities. After voicing her concerns to senior Continental officials, plaintiff filed a charge of employment discrimination with the Connecticut Commission on Human Rights and Opportunities (the "CCHRO").

In Count I of her complaint, plaintiff details her allegations that she became the target of harassment designed as retaliation after filing charges with the CCHRO. Plaintiff eventually filed a second charge of retaliation with the CCHRO. On January 21, 1982, plaintiff was informed that she was terminated by Continental. Plaintiff amended her retaliation charge with the CCHRO to include a claim of retaliatory discharge.

The instant action was filed on February 16, 1982, seeking a preliminary injunction requiring Continental to reinstate plaintiff to her former position. Finding no irreparable injury, Judge Zampano of this court denied plaintiff's application and dismissed her complaint because no relief was sought other than a preliminary injunction *Holt v. Continental Group*, 542 F.Supp. 16 (D.Conn.1982). On appeal, the Second Circuit noted that plaintiff had asserted that Continental's conduct had imposed a "chilling effect" on the exercise of her Title VII rights by intimidating potential witnesses favorable to her. Because such a chilling effect, if proved, would constitute irreparable injury, the case was remanded for further consideration. *Holt v. Continental Group*, 708 F.2d 87 (2d Cir.1983).

On remand, the case was reassigned to this judge, and extensive hearings have been held on the question of irreparable injury. The plaintiff's motion for a preliminary injunction will be decided in a separate ruling after consideration of the final submissions by the parties.

On November 27, 1984, plaintiff filed an amended complaint. Count I of the amended complaint realleges the facts set out in the sixty-six paragraphs of the original complaint. Count II adds the CCHRO, the Executive Committee of the CCHRO (the "Executive Committee") and the State Connecticut as defendants. Because Arthur Green, Director of the CCHRO, Joseph Lieberman, Attorney General of Connecticut, and Governor O'Neill are mentioned in the caption and in the body of the complaint, they will also be treated as defendants. The defendants named in the second count will be referred to collectively as the "state defendants." Count II includes 128 paragraphs alleging facts which plaintiff asserts establish that the defendants knowingly and intentionally stalled the investigation of her charges and prevented her from obtaining an investigation by the United States Equal Employment Opportunity Commission (the "EEOC"). The third count realleges the 194 paragraphs of the previous two counts and adds a single allegation that Continental and the

state defendants acted in concert to deprive plaintiff of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–e *et seq.*

■■■ The second count of plaintiff's complaint asserts that her cause of action arises under the Civil Rights Acts of 1866 and 1870, 42 U.S.C. § 1981 *et seq.* Although the complaint does not specify the section(s) upon which she relies, in her memoranda plaintiff clarifies that her cause of action is based upon 42 U.S.C. § 1983 ("section 1983").[1] On page nine of her memorandum in opposition to the motion to dismiss, she states:

> The heart of Plaintiff's claim against all state Defendants is that they have implemented policies and procedures which prevent her free exercise of her right to obtain a a [sic] federal investigation of her Title VII charges and thereafter exacerbated that denial by consistently refusing to investigate the allegations of Plaintiff's charges.

Plaintiff also argues that her complaint establishes that she was deprived of equal protection because, by its actions, the state defendants have denied her "rights, privileges and immunities enjoyed by citizens of the several states...." Plaintiff's reply memorandum at 13. She further asserts that her claim "is not a procedural due process claim." *Id.* at 14. The gravamen of Count II of plaintiff's complaint appears to be that the policies and procedures of the state defendants, combined with the failure to properly process her charges, prevented her from enforcing her rights created by Title VII.

Count III of the amended complaint appears to be alleging concerted activity on the part of Continental and the state defendants to preclude plaintiff's enforcement of her Title VII rights. This count appears to assert a cause of action under either section 1983 or 42 U.S.C. § 1985(3) ("section 1985(3)"), or both.[2]

---

1. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Although plaintiff's complaint cites to the Civil Rights Act of 1870, section 1983 is derived from the Civil Rights Act of 1871.

If plaintiff is asserting a cause of action under 42 U.S.C. § 1981 (section 1981), her complaint fails to state a claim. Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

In order to prevail on an action brought pursuant to section 1981, a plaintiff must allege and prove discrimination based upon race. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Pollard v. City of Hartford,* 539 F.Supp. 1156, 1164–65 (D.Conn.1982). *Cf. Jones v. Mayer,* 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (construing 42 U.S.C. § 1982). Plaintiff has not asserted, nor has she argued, that she was the victim of racial discrimination on the part of the state defendants. She has also failed to allege that she has been treated any differently from similarly situated persons of other races. To the extent that plaintiff might wish the court to infer allegations of racial discrimination by reading between the lines of her complaint, such an inference would run contrary to the practice of this circuit of requiring allegations of facts showing some deprivation of civil rights. *Fine v. City of New York,* 529 F.2d 70, 73 (1975); *Powell v. Jarvis,* 460 F.2d 551, 553 (2d Cir.1972); *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964).

2. Section 1985(3) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons with-

The state defendants have moved to dismiss the complaint for a number of reasons. They have asserted that the defendants are protected by the doctrine of sovereign immunity, that they are protected by qualified immunity, that the court should dismiss based upon the abstention doctrine set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and that the complaint fails to state a claim. Because the court determines that the allegations set forth in the second and third counts of the amended complaint fail to state a claim upon which relief can be granted, the other grounds for dismissal are not addressed.

## II. *Section 1983 Claim*

■ Plaintiff's section 1983 claim alleges that policies and practices of the state defendants precluded her from enforcing rights established by Title VII. Plaintiff acknowledges that this court is without authority to require the state defendants to enforce rights established solely under state law. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ The CCHRO is a state agency established under state law to enforce state-created rights. *See* Conn.Gen.Stat. §§ 46a–52, 54, 56, 60, 82. Although many discriminatory practices made illegal under federal law are also made illegal under Connecticut statutes, the Connecticut anti-discrimination laws are more extensive than their federal counterparts. *Compare* Conn.Gen.Stat. § 42a–60 *with* Title VII. To the extent that a discriminatory practice which is illegal under federal law is also illegal under Connecticut law, the CCHRO may assert jurisdiction over the claim.

However, the mere fact that the CCHRO may assert jurisdiction over a practice that is illegal under federal law does not give a claimant a *federal* right to a CCHRO investigation.

■ In drafting and amending Title VII, the Congress adopted a comprehensive enforcement scheme that includes both administrative and judicial forums for the resolution of employment discrimination claims. *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 359, 97 S.Ct. 2447, 2450, 53 L.Ed.2d 402 (1977). In recognition of state attempts to also combat employment discrimination, Congress provided that the EEOC should defer action for 60 days in states with administrative remedies for such discrimination. 42 U.S.C. § 2000e–5(c). The purpose of this deferral provision was to give state agencies a limited opportunity to resolve discrimination complaints at a local level before triggering federal involvement. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262, *reh. den.* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982). However, the requirement that the EEOC defer to a state agency for sixty days before asserting jurisdiction does not create a *federal* right to an effective investigation by the *state* agency. In fact, Congress required deferral only for sixty days because it recognized that state administrative agencies might not be effective in rectifying employment discrimination. *Kremer, supra* at 494–496, 498, 102 S.Ct. at 1904–05, 1906. (Blackmun, J., dissenting). (Citing to legislative history) Rather than require a particular level of effectiveness from state agencies, Congress determined to allow the claimant to resort to a federal

in such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any

case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

▆▆▆▆▆▆▆

remedy after a limited period of deferral. *Id.*

▆▆▆▆ Because Title VII does not create a federal right to an effective state investigation, plaintiff cannot assert a claim under section 1983 based solely upon the state defendants' failure to provide an effective state investigation.[3] Apparently recognizing that she cannot assert a federal cause of action based solely upon an inadequate investigation by the state agency, plaintiff has argued that state agency policies and practices have precluded her from enforcing her Title VII rights in federal forums. She has alleged that she was informed by an EEOC official that the EEOC "could not process her charge until the CCHRO waived its jurisdiction to the [EEOC]...." Amended Complaint, Count II, ¶ 36. She also alleges that, after she received conflicting information, the CCHRO refused to "waive jurisdiction," believing that it was not authorized by statute or regulation to do so. However, plaintiff was informed by the CCHRO that she could withdraw her complaint, whereupon the EEOC could assume jurisdiction. The substance of plaintiff's claim appears to be that by requiring withdrawal of the complaint rather than "waiving" jurisdiction, the CCHRO denied plaintiff of her right to a federal investigation of her complaint.

The crux of plaintiff's argument appears to be that, by requiring withdrawal of a complaint, the CCHRO renders the complaint "procedurally infirm" so as to effectively preclude a federal remedy. However, plaintiff has cited no case law to support this contention. To the contrary, every case that has come to the court's attention addressing this question has found that a plaintiff who has waited for the expiration of the sixty-day deferral period, and has given the state agency a *bona fide* opportunity to resolve the complaint, is not prejudiced by a voluntary withdrawal of the state administrative complaint. *Collins v. Manufacturers Hanover Trust Co.,* 542 F.Supp. 663, 668 (S.D.N.Y.1982); *Meyer v. MacMillan Pub. Co., Inc.,* 536 F.Supp. 791 (S.D.N.Y.1982); *Lombardi v. Margolis,* 465 F.Supp. 99 (E.D.Pa.1979); *Guse v. J.C. Penney,* 409 F.Supp. 28 (E.D. Wis.1976), *rev'd on other grounds,* 562 F.2d 6, 8 (7th Cir.1977) (affirming on this issue). *Cf. Albano v. General Adjustment Bureau,* 478 F.Supp. 1209 (S.D.N.Y.1979) (plaintiff failed to give state agency any opportunity to resolve complaint).

The Supreme Court has repeatedly recognized that the deferral to state agencies is for a limited period only, with the EEOC asserting jurisdiction at the end of the sixty-day deferral period or when state proceedings terminated. *Kremer, supra* at 470–71, n. 8, 102 S.Ct. at 1891–92 n. 8; *New York Gaslight Club v. Carey,* 447 U.S. 54, 64–65, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980); *Oscar Meyer & Co. v. Evans,* 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979); *Cf. Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) (EEOC assumes jurisdiction automatically sixty days after referral of complaint to state agency). The EEOC's own regulations also recognize that the deferral to state agencies is for a limited period, and that the charge is "deemed" filed with the EEOC upon expiration of sixty days after the claim is filed with the state agency, upon termination of the state agency's proceedings, or upon waiver by the state agency of its right to exclusively process the charge. *See* 29 C.F.R. § 1601.-13(b).

---

3. The court notes that several cases have indicated that a plaintiff cannot assert a cause of action based upon the failure of the EEOC to perform an effective investigation. *See Ward v. EEOC,* 719 F.2d 311 (9th Cir.1983); *Stewart v. EEOC,* 611 F.2d 679 (7th Cir.1979); *Francis-Sobel v. University of Maine,* 597 F.2d 15 (1st Cir.1979); *Pearlswig v. Randolph,* 497 F.Supp. 569 (D.Mass.1980); *Hall v. EEOC,* 456 F.Supp. 695 (N.D.Cal.1978). These cases have relied upon the fact that Congress provided a *de novo* right of action in federal court for any claimant dissatisfied with EEOC action. *See e.g. Stewart v. EEOC, supra* at 681–82. This reasoning is even more persuasive with respect to state agencies. Although Congress did not establish any federal rights with respect to state agencies, it apparently did establish a federal right to action by the EEOC. *See* 42 U.S.C. § 2000e–5(b).

The allegations set out in plaintiff's complaint establish that she gave the CCHRO a *bona fide* opportunity to resolve her complaint for at least sixty days. It is apparent that, at the completion of that sixty-day period, plaintiff had complied with Title VII's mandate that she give the CCHRO a limited opportunity to resolve her complaint. Nothing in Title VII or the cases indicates that plaintiff was required to exhaust what she believed to be an ineffective and inefficient process. She was not precluded at that point from withdrawing her complaint before the CCHRO and proceeding before the EEOC.

Plaintiff also appears to be arguing that by not "waiving" jurisdiction, the CCHRO deprived her of a right to an investigation by the EEOC. It is unclear what plaintiff means by "waiving" jurisdiction and how a request for a waiver differs from a request to withdraw the complaint. *See Collins v. Manufacturers Hanover Trust Co., supra* (request for waiver of jurisdiction, which was treated as a withdrawal by state agency, did not prejudice plaintiff's Title VII rights). If a waiver is the ceasing of the exercise of jurisdiction, then the distinction between a waiver and a withdrawal is one without a difference. The Court cannot understand why a request that a state agency cease its processing of a claim would preserve plaintiff's Title VII rights to an EEOC investigation while a "withdrawal" of that same claim would prejudice those rights. Furthermore, nothing in the statute or regulations indicates that the EEOC's power to investigate is in any way affected by the manner in which the state agency proceedings terminate. *See* 29 C.F.R. § 1601.13(b).

If by "waiver", the plaintiff means the waiving of a state agency's exclusive jurisdiction so as to permit a concurrent EEOC investigation, there is no violation of Title VII rights by failing to grant such a waiver. A state is not required by Title VII to expend its limited resources in duplicating a process also under way in a federal agency. Although Title VII may grant plaintiff a right to a federal investigation, nothing in Title VII even hints at a right to have a concurrent state investigation. The state's requirement that plaintiff withdraw her complaint rather than waive its exclusive jurisdiction did not deny plaintiff her right to a federal investigation. It simply prevented plaintiff from having concurrent state *and* federal investigations of her claims.

The plaintiff has failed to present any allegations of fact indicating that the state defendants have caused her to be deprived of any rights, privileges, or immunities secured under the laws or Constitution of the United States. Therefore, the second count of the amended complaint is dismissed.

### III.  *Section 1985*

Count III of plaintiff's complaint appears to be an attempt to state a cause of action under 42 U.S.C. § 1985(3). *See* note 3, supra. This count asserts, after realleging all facts pleaded in the two previous counts, that Continental acted in concert with the state defendants to deprive her of her statutory rights guaranteed by Title VII. This count fails to state a claim for several reasons.

Plaintiff's single allegation that the defendants acted in concert to deprive her of her civil rights is too conclusory to meet the requirements that a complaint allege facts indicating such a deprivation. *See Fine v. City of New York*, 529 F.2d 70, 73 (1975); *Ward v. EEOC*, 719 F.2d 311, 314 (9th Cir.1983); *Francis-Sobel v. University of Maine*, 597 F.2d 15, 17 (1st Cir. 1979). There is also nothing in the complaint supporting the conclusory allegation of concerted action. *Ellentuck v. Klein*, 570 F.2d 414, 426 (2d Cir.1978). Furthermore, to the extent that plaintiff relies on the allegations in Counts I and II, these allegations fail to establish a violation of a right protected by the Constitution and laws of the United States. *See* Part II, *supra.* Finally, the plaintiff has failed to make any allegations of class-based discrimination as required to state a claim under section 1985(3). *Kush v. Rutledge,*

460 U.S. 719, 725–26, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 388 (1971). Accordingly, Count III of the amended complaint is dismissed for failure to state a claim.

## CONCLUSION

Counts II and III of plaintiff's amended complaint are dismissed. There being no just reason for delay, judgment shall enter pursuant to Rule 54(b), F.R.C.P., in favor of the State of Connecticut, William O'Neill, The Connecticut Commission on Human Rights and Opportunities, Arthur L. Green, the Connecticut Executive Committee on Human Rights and Opportunities, and Joseph Lieberman.

SO ORDERED.