Carolyn GORDON, Plaintiff,

v.

Robert NICOLETTI, Nancy Greene, Eugene Horrigan, Charles Sweetman, and Regional School District 12 Board of Education, Defendants.

No. 3:97CV1417(GLG).

United States District Court,
D. Connecticut.

Feb. 10, 2000.

William M. Laviano, Laviano Law Offices, Ridgefield, CT, for Plaintiff.

Richard D. O'Connor, Siegel, O'Connor, Schiff & Sangari, Hartford, Peter D. Clark, Shelton, CT, Dana Shaw MacKinnon, Hartford Life Insurance Co., Law Dept., Simsbury, for Defendants.

## OPINION

GOETTEL, District Judge.

Pending before this Court are Defendants' Motion for Summary Judgment as to all six counts of Plaintiff's Amended Complaint [**Doc. # 58**], and Plaintiff's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment as to Liability Only on Counts One and Four [**Doc. # 47**].

### Background

The facts underlying plaintiff's claims are largely undisputed. At all relevant times, plaintiff was, and in fact still is, a tenured teacher with the Regional School District No. 12 Board of Education. By reason of her tenure and annual contracts of employment, plaintiff was not terminable at will. In 1996, defendant Nicoletti, Superintendent of Schools for Regional School District No. 12, notified plaintiff that termination of her contract of employment was under consideration. Plaintiff requested a statement of the reasons for this action, to which defendant Nicoletti responded in writing that she was being terminated for "inefficiency or incompetence" and "other due and sufficient causes," two of the reasons for termination enumerated in Connecticut's Teacher Tenure Act, C.G.S.A. § 10–151(d).[1] In accordance with statutory procedures, plaintiff filed a written request for a hearing before an impartial hearing panel, consisting of an

---

1. Under § 10–151(d), there are six potential grounds for termination of the contract of a tenured teacher: (1) inefficiency or incompetence; (2) insubordination; (3) moral misconduct; (4) medical disability; (5) elimination of the teacher's position; and (6) "other due and sufficient cause." *See Mendillo v. Board of Educ. of East Haddam,* 246 Conn. 456, 468, 717 A.2d 1177 (1998).

attorney chosen by the Superintendent, an attorney chosen by plaintiff, and a third member chosen by the first two panel members. *See* C.G.S.A. § 10–151(d). Hearings commenced on August 12, 1996, and by stipulation of the parties were continued several times. After 28 days of hearings, on March 3, 1997, the Hearing Panel issued its decision. A majority of the Panel found no basis to terminate plaintiff for incompetency, inefficiency or any other due and sufficient cause. *See* Decision of Hearing Panel dated Mar. 3, 1997 at ¶¶ 115—117, 128, 129, 134 (hereinafter "Panel Decision"). The Panel further found that the Administration had failed to comply with its legal obligation to formally evaluate plaintiff in accordance with its written teacher evaluation plan, the Intensive Assistance Plan ("IAP"), and that the Administration was grossly negligent in terminating plaintiff without making any substantial attempt to evaluate, assist and remediate her as required by the IAP. Panel Decision, Conclusions of Law at ¶¶ 3–7. The third panel member issued a dissenting opinion, concluding that there was sufficient evidence to find that plaintiff was incompetent and, therefore, that plaintiff should be terminated. *See* Panel Decision at 41. The Panel's Decision was then submitted to the Board of Education, which voted to reinstate plaintiff.[2] No appeal of the Panel Decision was filed.[3]

The following school year, the School Board transferred plaintiff from her position as a seventh grade language arts teacher at the Middle School to the High School, where she was assigned to teach math and writing classes, for which she was certified but which she had not taught for some time. During the termination process, plaintiff was suspended from her position as a seventh grade language arts teacher at Shepaug Middle School, but during the entire suspension, plaintiff received her full salary and all benefits, seniority, and tenure. In March of 1997, when she resumed teaching, plaintiff's pay and benefits remained the same.

Plaintiff then commenced this action. Her amended complaint invokes this Court's federal question jurisdiction under 28 U.S.C. § 1331, and sets forth six counts. The two federal claims are for defendants' intentional violation of plaintiff's due process rights in violation of 42 U.S.C. § 1983 (Count One), and for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (CountSix).[4] Plaintiff also has asserted state-law claims for intentional infliction of emotional distress (Count Two), negligent infliction of emotional distress (Count Three), breach of contract against the Board of Education (Count Four), and tortious interference with contractual relations (Count Five).

**2.** According to section 10–151(d), C.G.S.A., the Panel is required to submit to the Board of Education "written findings and a recommendation." The Board is then required to give the teacher concerned its written decision within 15 days of its receipt of the Panel's recommended decision.

**3.** Plaintiff points out that the Board of Education did not appeal the Panel's Decision to the Superior Court. The Court does not read section 10–151 as giving the Board a right of appeal. Subsection (e) provides that "[a]ny *teacher* aggrieved by the decision of a board of education after a hearing … may appeal therefrom…." (Emphasis added). Rather than having a right of appeal, the Board

could have voted not to accept the Panel's recommendations. *See* C.G.S.A. § 10–151(d). The Board was bound by the Panel's findings of fact, but not by its conclusions of law or its recommendations. *Sekor v. Board of Educ. of Ridgefield,* 240 Conn. 119, 125, 689 A.2d 1112 (1997). In this case, however, the Board voted to reinstate plaintiff.

**4.** Plaintiff originally sued the Connecticut Education Association and William Dolan for breach of third-party beneficiary contract and promissory estoppel. That claim was dismissed by the Court. Plaintiff then filed an amended complaint in which she substituted her age discrimination claim for the count that had been dismissed.

### Discussion

### I. Plaintiff's Federal Claims

#### A. Section 1983—14th Amendment Due Process Violation

Count One of plaintiff's complaint is for defendants' alleged violation of plaintiff's due process rights under the Fourteenth Amendment by virtue of their retaliation against her and their attempts to deprive her of her property rights and liberty interest. In her complaint, plaintiff alleges that the defendants affiliated with the Region 12 Board of Education "engaged in a course of conduct which was intentional, malicious and grossly negligent to deprive plaintiff of her teaching position and to cause her to spend large sums of money in defending a baseless termination proceeding pursuant to C.G.S. 10–151 which resulted in a decision ... in plaintiff's favor and finding that the conduct of certain of the defendants was malicious, grossly negligent and without basis in law or fact." (Pl.'s Compl. at 1–2). She further alleges that the defendants "and in particular defendant Sweetman, the current superintendent of schools beginning on April 3, 1997 has [sic] since conspired and acted as set forth below, to harass and deprive plaintiff, under color of state law, of her teaching position, and to retaliate for her success in the 10–151 proceedings." *Id.* at 2. The alleged harassment included reassigning plaintiff from her teaching position at the Middle School to teach courses at the High School that she had not taught for many years. *Id.* She further alleges that, upon hearing of the Panel's Decision, defendants Sweetman, Greene, and the Board of Education retaliated against her and attempted to deprive her of a property right and liberty interest by intimidating a student, who had testified on her behalf before the Panel, by subjecting him to discriminatory discipline, thus causing

plaintiff great stress and pain;[5] by intentionally reassigning plaintiff to the High School in an attempt to force her to resign; by depriving her of the support of her colleagues at the Middle School and to provide an example for other teachers that those who exercise their rights will be "dealt with" regardless of the outcome of the proceedings; and by causing her emotional pain by making her transition back to teaching more difficult. (Pl.'s Compl. at 7–8, ¶ 16).

Defendants argue that plaintiff was never deprived of a property interest since plaintiff never suffered any pecuniary loss and was reinstated without any loss of pay or benefits. Additionally, defendants maintain that plaintiff's alleged liberty interest in her reputation and good name is not a protectible liberty interest under the Due Process Clause. Finally, defendants assert that plaintiff was afforded procedural due process.

Plaintiff asserts that this Court is bound by the Panel's findings, "which are res judicata and collateral estoppel as to these defendants," and which establish "irrefutable liability" for the violation of plaintiff's constitutional rights under section 1983.

Due process claims may take one of two forms: procedural due process or substantive due process. Procedural due process claims concern the adequacy of the procedures provided by the governmental body for the protection of liberty or property rights of an individual. Substantive due process claims concern limitations on governmental conduct toward an individual regardless of the procedural protections. *DeLeon v. Little*, 981 F.Supp. 728, 734 (D.Conn.1997) (citations omitted). Plaintiff does not specify whether she is alleging a denial of her substantive or procedural due process rights, or both. However, to establish a

---

5. This claim apparently refers to a student at Shepaug Middle School, who had circulated a petition in support of plaintiff. He testified before the Hearing Panel that the principal physically grabbed him and was physically

violent, and that she punished another student who inquired as to why the plaintiff had been fired. Panel Decision at ¶ 55. The Panel found these facts to be "believable evidence." *Id.*

violation of either substantive or procedural due process, plaintiff must initially show that she was deprived of a property or liberty interest. *Id.* Thus, our threshold inquiry is whether plaintiff had a constitutionally protected property or liberty interest. If so, we will then consider whether there was a deprivation of that interest.

## 1. Property Interest

No one disputes that plaintiff, a tenured teacher, had a property interest in her continued employment. *See Gilbert v. Homar,* 520 U.S. 924, 928, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (holding that public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (same); *DeMichele v. Greenburgh Central School Dist. No. 7,* 167 F.3d 784, 789 (2d Cir.1999) (same); *Rado v. Board of Educ.,* 216 Conn. 541, 555, 583 A.2d 102 (1990) (recognizing a tenured teacher's property interest in continued employment, entitled to due process protection); *Petrowski v. Norwich Free Academy,* 199 Conn. 231, 234, 506 A.2d 139 (1986) (holding that, under Connecticut law, a tenured teacher's right to continued employment is a property right under the Due Process Clause of the Fourteenth Amendment). Although plaintiff was tenured and had a protectible property interest in continued employment, she was never deprived of that interest since she was never terminated and never suffered a loss of pay or benefits. Plaintiff does not claim otherwise.

█ Instead, plaintiff asserts that defendants "*attempted to deprive*" her of her property rights" in remaining at the same school, in teaching the same subjects, in working with the same colleagues. None of these aspects of plaintiff's teaching position, however, are considered property interests protected by the Constitution. *See Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 539 (10th Cir.1995) (citing to the "overwhelming weight of authority" that, absent a specific statutory or contractual provision to the contrary, no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory or contract provision to the contrary) (collecting cases); *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486 (11th Cir.1992) (transfer with no loss of pay or rank did not deprive plaintiff of a protected property interest), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *Huang v. Board of Governors of Univ. of North Carolina,* 902 F.2d 1134, 1141–42 (4th Cir. 1990) (tenured college professor had no property interest in particular departmental assignment under North Carolina law); *Kelleher v. Flawn,* 761 F.2d 1079, 1087 (5th Cir.1985) (no property interest in a particular teaching assignment under Texas law); *Parrett v. City of Connersville,* 737 F.2d 690, 693 (7th Cir.1984)(expressing doubt as to whether a lateral transfer, involving no loss of pay, could ever be a sufficient deprivation to violate the Fourteenth Amendment and noting that a contrary conclusion could subject all personnel actions by state and local governmental agencies to claims under section 1983), *cert. dismissed,* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985); *Childers v. Independent Sch. Dist. No. 1,* 676 F.2d 1338, 1341 (10th Cir.1982) (holding that although tenured teachers had a property right in continued employment, they did not have a property interest in a particular assignment because their contract did not provide that teachers must be given the same assignment or wages upon renewal); *DeLeon,* 981 F.Supp. at 735 (transfer to a different position with same pay and benefits did not constitute a deprivation of a property interest under the Fourteenth Amendment). In *Sekor v. Board of Educ. of Ridgefield,* 240 Conn. 119, 128, 689 A.2d 1112 (1997), the Connecticut Supreme Court held that a tenured teacher had a right only to a generic position as a teacher, rather than a right to a specific position, and that the school board had plenary

administrative authority over her assignments.

■ Property interests are created not by the Constitution itself, but are created and defined by independent sources such as state statutes, regulations, municipal ordinances, and contracts. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff has cited no statute or contract provision or any other independent source that would support her entitlement to remain in her position as a fine arts teacher at the Middle School. Therefore, the Court holds that plaintiff has failed to allege a deprivation of a property interest with respect to her reassignment.

■ Plaintiff also complains that, after defendants received the Panel's unfavorable decision, they attempted to intimidate a witness who had testified before the Hearing Panel. Plaintiff was rendered, plaintiff neither has standing to assert this claim on behalf of a third party nor does she have a cause of action for violation of her constitutional rights in this regard.

■ Plaintiff's other alleged property interest is based upon C.G.S.A. § 10–151b,[6] pursuant to which she claims that she was entitled to have defendants formally follow the IAP in evaluating her and in providing remediation for any performance deficiencies. Although this claim is not clearly articulated in her complaint, in her papers submitted in connection with her motion for summary judgment, plaintiff emphasizes this as her principal due process claim.

The point is not that plaintiff finally had a[sic] great expense a constitutionally adequate hearing in which she prevailed, the point is that before she went to that expense, she was deprived of the process mandated by statute and approved by official act of the defendant Board, which if followed would have saved her those costs.

Plaintiff alleges that she had a statutory and contractual right to a fair IAP and that defendants intentionally, maliciously, and recklessly deprived her of this right in violation of the Due Process Clause. She seeks to recover all of her attorney's fees expended in connection with the Panel Hearing, which she claims never would have been necessary had she been afforded her rights to a fair evaluation and remediation.

■ While state law defines the underlying substantive interest, federal constitutional law determines whether that interest rises to a "legitimate claim of entitlement" protected by the Due Process Clause. *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 782 (2d Cir.) (quoting *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978)), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 965 (2d Cir.1988). Not every contractual or statutory right rises to the level of a constitutionally protected property interest. *Ezekwo,* 940 F.2d at 782. "It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a [state actor] into a federal claim." *Id.* (quoting

---

**6.** Section 10–151b, C.G.S.A., provides:

(a) The superintendent of each local or regional board of education shall, in accordance with guidelines established by the State Board of Education for the development of evaluation programs and such other guidelines as may be established by mutual agreement between the local or regional board of education and the teachers' representative chosen pursuant to section 10–153b, continuously evaluate or cause to be evaluated each teacher.

An evaluation, pursuant to this subsection shall include, but need not be limited to, strengths, areas needing improvement and strategies for improvement....

(b) Each local and regional board of education shall develop and implement teacher evaluation programs consistent with guidelines established by the State Board of Education and consistent with the plan developed in accordance with the provisions of subdivision (2) of subsection (b) of section 10–220a.

*San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino,* 825 F.2d 1404, 1408 (9th Cir. 1987)). Plaintiff has cited no authority to support her claim that she possesses a property interest protected by the Due Process Clause to an evaluation and remediation in accordance with the IAP, and we have found no such authority. In a somewhat analogous context, this Court has previously held that there is no federal right to an effective state agency investigation into an employment discrimination complaint, and accordingly, a plaintiff could not assert a claim under section 1983 based solely upon the state defendants' failure to provide an effective state investigation. *See Holt v. Continental Group, Inc.,* 631 F.Supp. 653, 658 (D.Conn.1985), *aff'd,* 788 F.2d 3 (2d Cir.), *cert. denied,* 479 U.S. 839, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986).

■ Moreover, even assuming plaintiff had a property interest in a fair evaluation and remediation, plaintiff's section 1983 claim must fail for two additional reasons. First, there is nothing in the record except plaintiff's self-serving speculation that would support her claim that she would not have been subjected to a termination hearing had the IAP been followed. Second, following this allegedly unfair evaluation process, plaintiff received what she concedes was a "constitutionally adequate hearing," at which she prevailed. Thus, even if we were to find a deprivation of a protectible property interest in defendants' not following the IAP in evaluating plaintiff and providing remediation, plaintiff received a post-deprivation hearing, which she admits was "constitutionally adequate." The only other deprivation plaintiff suffered is the expense she incurred in connection with this "constitutionally adequate hearing." Yet, at least one Connecticut court has held that a tenured teacher is not entitled to free legal services for her defense in a section 10–151 hearing. *See Caracoglia v. Middletown Federation of Teachers,* No. CV960078034S, 1998 WL 252239 at *6 (Conn.Super. May 6, 1998). Accordingly, we hold that plaintiff has failed to allege a deprivation of a property interest in this regard.

## 2. Liberty Interest in Plaintiff's Reputation and Good Name

■ Plaintiff also asserts that she was deprived of a liberty interest in her reputation and good name. The concept of "liberty" guaranteed by the Fourteenth Amendment is broad, but not so broad as to encompass plaintiff's claim. In *Roth,* the Supreme Court held that a State University's decision not to rehire a professor did not implicate a "liberty" interest under the Fourteenth Amendment because there was no suggestion that the teacher's "good name, reputation, honor, or integrity" was at stake, nor was there a suggestion that the State had imposed upon him "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Roth,* 408 U.S. at 573, 92 S.Ct. 2701; *see also Perry v. Sindermann,* 408 U.S. at 599, 92 S.Ct. 2694 (the mere showing that a teacher was not rehired in one particular job, without more, did not amount to a showing of a loss of liberty); *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630 (2d Cir.1996) (holding that a decision not to rehire a teacher standing alone does not deprive that employee of liberty. Special aggravating circumstances are needed to implicate a liberty interest), *cert. denied,* 519 U.S. 1150, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). "[E]ven governmental allegations of professional incompetence do not implicate a liberty interest in every instance. Such allegations will support a right to a name-clearing hearing only when they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Donato,* 96 F.3d at 630–31 (citations omitted). In this case, there were no "special aggravating circumstances" that would implicate a

liberty interest, and even had there been, plaintiff received a "name-clearing hearing" and was reinstated. *See Geren v. Board of Educ. of Town of Brookfield,* 36 Conn.App. 282, 290, 650 A.2d 616 (1994) (the remedy mandated by the Due Process clause for deprivation of a liberty interest is an opportunity to refute the charge, to provide the person with an opportunity to clear his name). Plaintiff's complaint is also devoid of any allegation of a falsehood propagated by her employer, which is fatal to her liberty interest claim. *Id.* Thus, we hold that plaintiff has failed to state a claim for deprivation of a liberty interest under the Due Process Clause.

■ Moreover, the Second Circuit has held that due process in implicated only when there is a "stigma plus," in other words a loss of reputation coupled with some other tangible element. *Morris v. Lindau,* 196 F.3d 102, 114 (2d Cir.1999) (citations omitted). "Damage to an employee's reputation brought about by an employer's stigmatizing comments standing alone ... is a matter properly vindicated under state tort law, and does not rise to a deprivation of a constitutional right." *Id.* (citations omitted); *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26, 31 (2d Cir.1994). For a government employee, a federal cause of action for deprivation of a liberty interest arises only when the alleged defamation occurs in the course of some negative alteration of the employee's status, such as a dismissal or refusal to rehire. *Morris,* 196 F.3d at 114. Thus, the Second Circuit has stated that the "plus" that is required is not only significant damage to a person's employment opportunities but dismissal from a government job or deprivation of some other legal right or status. *Martz,* 22 F.3d at 32 (internal citations and quotations omitted). Even in the case of a demotion, the Second Circuit has held that the liberty interest implicated is "at best ... weak." *Baden v. Koch,* 799 F.2d 825, 831 (2d Cir.1986).

In this case, plaintiff suffered no deprivation of a legal right or status. *See Valmonte v. Bane,* 18 F.3d 992, 1000 (2d Cir.1994). She was not terminated. Indeed, she was not even demoted. *See Dobosz v. Walsh,* 892 F.2d 1135, 1140 (2d Cir.1989) (holding that a police officer who was reinstated with back pay and seniority after suspension was not deprived of a due process liberty interest since he suffered no alteration in his legal status or a right recognized under state law); *Maples v. Martin,* 858 F.2d 1546, 1550 (11th Cir. 1988) (holding that transfer of university professors between departments without loss of rank or pay did not implicate a liberty interest of the professors). Although plaintiff may well have experienced some embarrassment or humiliation associated with her suspension during the termination hearings, plaintiff has failed to meet the requirement of a stigma *plus* some other deprivation. We find that plaintiff has failed to allege a deprivation of a constitutionally protected liberty interest.

■ Additionally, to the extent that plaintiff is seeking to allege a substantive due process violation by virtue of defendants' conduct, the Court finds as a matter of law that the actions of defendants in connection with plaintiff's evaluation were not arbitrary, conscience-shocking, or oppressive in a constitutional sense. *See Montefusco v. Nassau County,* 39 F.Supp.2d 231, 240–41 (E.D.N.Y.1999). "Substantive due process protects [individuals] against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect' or 'ill-advised.'" *Id.* at 240 (citations omitted); *see also Collins v. City of Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (government conduct must be arbitrary or conscience-shocking before a violation of substantive due process occurs).

Accordingly, because plaintiff has failed to allege a deprivation of a property or liberty interest entitled to due process pro-

tection, defendants' motion for summary judgment on Count One of plaintiff's amended complaint[7] is GRANTED and plaintiff's motion for summary judgment on Count One is DENIED.

### B.   ADEA Claim

Plaintiff has also attempted to invoke this Court's federal question jurisdiction by asserting an age discrimination claim under the ADEA as Count Six of her amended complaint. Defendants assert that plaintiff's claim under the ADEA is insufficient as a matter of law because plaintiff failed to institute suit within 90 days of her receipt of a right-to-sue letter, as required by 29 U.S.C. § 626(e), and because there is no individual liability under the ADEA.

In plaintiff's amended complaint, she alleges that she received her right-to-sue letter from the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission on or about September 23, 1997. Plaintiff did not file her age discrimination claim until February 4, 1998,[8] which is well beyond the 90–day period. Thus, her claim under the ADEA is time-barred. *See Sherlock v. Montefiore Medical Ctr.*, 84 F.3d 522, 525 (2d Cir.1996). Accordingly, plaintiff's age discrimination claim must be dismissed.

### II.   Plaintiff's State–Law Claims

Having dismissed all of plaintiff's federal claims, we also dismiss her pendent state-

law claims. 28 U.S.C. § 1367(c). *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Martz*, 22 F.3d at 32. We therefore do not reach the merits of plaintiff's motion for summary judgment on Count Four, her breach of contract claim, nor do we decide the merits of defendants' motion for summary judgment on Counts Two, Three, Four, and Five.

### Conclusion

Defendants' Motion for Summary Judgment [Doc. # 58] is GRANTED as to Counts One and Six of plaintiff's Amended Complaint. Plaintiff's Motion for Partial Summary Judgment [Doc. # 47] is DENIED. The Clerk is directed to enter judgment in favor of Defendants on the federal claims set forth in Counts One and Six of the Amended Complaint and to dismiss the remaining state-law claims. Judgment should be entered accordingly and the case closed.

SO ORDERED.

---

7.   Having so ruled, we need not reach defendants' arguments that plaintiff's claim against the individual defendants is barred by qualified immunity and that plaintiff's claim against the School Board is barred by *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

8.   This is the date on which plaintiff first sought leave to amend her complaint to include an age discrimination claim. Leave was granted on March 20, 1998, and plaintiff was ordered to provide defendants with a

copy of the right-to-sue letter. This she did by filing a second motion for leave to amend dated March 31, 1998. The right-to-sue letter attached to that motion is dated September 23, 1997. The second amended complaint only asserted an ADEA claim against the Board of Education. This second motion was granted on May 5, 1998. Because plaintiff is no longer asserting an age discrimination claim against the individual defendants, defendants' motion for summary judgment as to the individual defendants is moot.